UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                :

       - v. -                            :    <u>SUPERSEDING INDICTMENT</u>

MAHMOUD REZA BANKI,                      :    S1 10 Cr. 08 (JFK)

           Defendant.          :

- - - - - - - - - - - - - - - - - - - X

**<u>COUNT ONE</u>**

<u>CONSPIRACY TO VIOLATE IEEPA AND THE ITR AND TO
CONDUCT AN UNLICENSED MONEY TRANSMITTING BUSINESS</u>

      The Grand Jury charges:

<u>Background</u>

      1.   The International Emergency Economic Powers Act, Sections 1701 to 1706 of Title 50 of the United States Code ("IEEPA"), grants to the President of the United States a broad spectrum of powers necessary to "deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat."  Title 50, United States Code, Section 1701(a).

      2.   Pursuant to IEEPA, the President of the United States is authorized, among other things, to "investigate, regulate, or prohibit -- (i) any transactions in foreign exchange, (ii) transfers of credit or payments between, by, through, or to any banking institution, to the extent that such

transfers or payments involve any interest of a foreign country or any national thereof, [and] (iii) the importing and exporting of currency or securities." 50 U.S.C. § 1702(a)(1)(A). Also pursuant to IEEPA, the President is authorized, among other things, to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B). The President exercises these IEEPA powers through Executive Orders that impose economic sanctions to address particular emergencies and delegate IEEPA powers for the administration of those sanctions programs.

3.    On or about March 15, 1995, President William J. Clinton issued Executive Order 12957, which, among other things, stated that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States," and therefore declared "a national emergency to deal with that threat." At all times relevant to this Indictment, Presidents of

2

the United States have exercised their authority to continue the national emergency declared in Executive Order 12957 through successive presidential notices.

4.    On May 6, 1995, the President issued Executive Order 12959, which imposed comprehensive trade and financial sanctions on Iran (the "Iran Trade Embargo").  The Iran Trade Embargo prohibits, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person.  The Iran Trade Embargo also prohibits any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, any prohibition set forth in the Iran Trade Embargo. On August 19, 1997, the President issued Executive Order 13059 consolidating and clarifying the previous orders.  The Iran Trade Embargo has been continued and has been in effect at all times relevant to this Indictment.  Executive Order 12957, as expanded by Executive Orders 12959 and 13059 (collectively, the "Executive Orders"), was in effect at all times relevant to this Indictment.

5.    The Executive Orders authorize the Secretary of the Treasury, in consultation with the Secretary of State, to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes of the Executive Orders.  Pursuant to this authority, the Secretary of

3

the Treasury promulgated the Iranian Transactions Regulations ("ITR"), 31 C.F.R. Part 560, to implement the sanctions imposed by the Executive Orders. Within the Department of the Treasury, the Office of Foreign Assets Control ("OFAC") is responsible for administering the ITR and adjudicating requests for licenses to engage in transactions otherwise prohibited by the ITR.

6.    At all times relevant to this Indictment, the ITR has provided the following:

(i) 31 C.F.R. § 560.201 prohibits the "importation into the United States of any goods or services of Iranian origin or owned or controlled by the Government of Iran, other than information and informational materials."

(ii) 31 C.F.R. § 560.204 prohibits "the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran . . . including the exportation, reexportation, sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that: (a) Such goods, technology, or services are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran or the Government of Iran; or (b) Such goods, technology, or services are intended specifically for use in the production of, for commingling with,

4

or for incorporation into goods, technology, or services to be directly or indirectly supplied, transshipped, or reexported exclusively or predominantly to Iran or the Government of Iran;"

      (iii) 31 C.F.R. § 560.203 prohibits "[a]ny transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in [the ITR];"

      (iv) 31 C.F.R. § 560.206(a) prohibits a United States person, wherever located, from engaging "in any transaction or dealing in or related to (1) Goods or services of Iranian origin or owned or controlled by the Government of Iran; or (2) Goods, technology, or services for exportation, reexportation, sale, or supply, directly or indirectly, to Iran or the Government of Iran."  31 C.F.R. § 560.206(b) clarifies that "the term transaction or dealing includes but is not limited to purchasing, selling, transporting, swapping, brokering, approving, financing, facilitating, or guaranteeing."

      (v) 31 C.F.R. § 560.314 defines a "United States person" as, in relevant part, any United States citizen, permanent resident alien, or any person in the United States.

      (vi) Under the ITR, any United States person who wishes to engage in a transaction otherwise prohibited by the ITR

must first file an application for a license and receive approval
from OFAC.  31 C.F.R. §§ 560.500, 560.501, and 501.801.

## Means And Methods Of the Conspiracy

7.   From at least in or about January 2006, up to and
including in or about September 2009, MAHMOUD REZA BANKI, the
defendant, a citizen of the United States, a resident of
Manhattan, New York, and a consultant at a major management
consulting firm in Manhattan, provided, among other things, money
transmitting services to individuals located in Iran, in
violation of the foregoing regulations.

8.   More specifically, MAHMOUD REZA BANKI, the
defendant, received wire transfers totaling at least
approximately $3.4 million from foreign and domestic companies
and individuals into a personal bank account BANKI maintained for
this purpose at Bank of America in Manhattan (the "BofA
Account").  The foreign wire originators included companies based
in Saudi Arabia, Kuwait, Latvia, Slovenia, Russia, Sweden, and
the Philippines.  A large portion of the funds wired into the
BofA Account also was transferred to BANKI by Iranian expatriates
residing in the United States (the "wire originators").
Generally, BANKI did not know the wire originators personally.
BANKI received the funds from the wire originators with the
understanding that the funds would, in turn, be disbursed to
intended recipients residing in Iran (the "intended recipients").

6

9.   When MAHMOUD REZA BANKI, the defendant, received wire transfers from the wire originators into the BofA Account, he typically would inform an Iran-based co-conspirator not named as a defendant herein ("CC-1") that the funds had been received.

10.   Through CC-1 and/or other Iran-based co-conspirators not named as defendants herein, the intended recipients in Iran received the funds, less any fees.  The transfers in this case did not involve the physical or electronic transmissions of funds between the United States and Iran. Rather, the conspirators operated an informal value transfer system known as a "hawala."  In a hawala system such as the one conducted by MAHMOUD REZA BANKI, the defendant, and his co-conspirators, funds are transferred by customers to a hawala operator, or "hawaladar," in one country (here, the United States), and then corresponding funds, less any fees, are disbursed to recipients in another country (here, Iran) by foreign hawaladars associated with the U.S.-based hawaladar.

11.   MAHMOUD REZA BANKI, the defendant, used certain of the funds transferred to the BofA Account by the wire originators to, among other things, purchase a condominium in Manhattan (the "condominium") for approximately $2.4 million as a joint investment with CC-1; invest in securities for BANKI's own benefit and that of CC-1; and make payments on BANKI's credit card accounts.  For example, over an approximately one-month

7

period in the Summer of 2007, BANKI made credit card payments of approximately $55,000, drawn from the BofA Account.

12.   At all times relevant to this Indictment, MAHMOUD REZA BANKI, the defendant, did not apply for, receive, or possess a license or authorization from OFAC to import from Iran or export to Iran any goods and/or services, or to engage in any transactions or dealings in or related to same.

13.   At all times relevant to this Indictment, MAHMOUD REZA BANKI, the defendant, was not licensed to engage in the business of transmitting money by the State of New York.

14.   At all times relevant to this Indictment, MAHMOUD REZA BANKI, the defendant, was not registered as a money transmitting business with the United States Treasury Department.

<u>Statutory Allegations</u>

15.   From at least in or about January 2006, up to and including in or about September 2009, in the Southern District of New York and elsewhere, MAHMOUD REZA BANKI, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Sections 1701 to 1706 of Title 50, United States Code, Part 560 of Title 31, Code of Federal Regulations, and Section 1960 of Title 18, United States Code.

8

16.   It was a part and an object of the conspiracy that
MAHMOUD REZA BANKI, the defendant, and others known and unknown,
unlawfully, willfully, and knowingly would and did conduct
financial transactions for the purpose of, and which had the
effect of, violating, and which facilitated the violation of, the
prohibitions set forth in the Executive Orders and the
regulations issued under the International Emergency Economic
Powers Act, including the Iranian Transactions Regulations set
forth in Title 31, Code of Federal Regulations, Part 560, in
violation of Sections 1701 to 1706 of Title 50, United States
Code.

17.   It was further a part and an object of the
conspiracy that MAHMOUD REZA BANKI, the defendant, and others
known and unknown, unlawfully, willfully and knowingly would and
did conduct, control, manage, supervise, direct, and own all and
part of an unlicensed money transmitting business affecting
interstate and foreign commerce, to wit, BANKI accepted millions
of dollars of wire and other transfers into the BofA Account in
Manhattan, and, through co-conspirators in Iran, helped to
effectuate the transfer of corresponding amounts, less any fees,
to residents within Iran, (a) without an appropriate money
transmitting license in a State, to wit, New York, where such
operation is punishable as a misdemeanor and a felony under State
law; (b) while failing to comply with the money transmitting

business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section; and (c) knowing that such funds were derived from a criminal offense and were intended to be used to promote and support unlawful activity, to wit, violations of IEEPA and the Executive Orders and regulations attendant thereto, in violation of Section 1960 of Title 18, United States Code.

<u>OVERT ACTS</u>

18.  In furtherance of the conspiracy and to effect the illegal objects thereof, MAHMOUD REZA BANKI, the defendant, and others known and unknown, committed the following overt acts in the Southern District of New York and elsewhere:

a.  On or about May 10, 2006, MAHMOUD REZA BANKI, the defendant, received a wire transfer in the amount of approximately $187,000 into the BofA Account.

b.  On or about May 16, 2006, MAHMOUD REZA BANKI, the defendant, received a wire transfer in the amount of approximately $60,000 into the BofA Account.

c.  On or about August 10, 2006, MAHMOUD REZA BANKI, the defendant, received a wire transfer in the amount of approximately $6,000 into the BofA Account.

d.  On or about August 12, 2006, MAHMOUD REZA BANKI, the defendant, sent an electronic message to CC-1, in Iran, and

10

others, confirming, in sum and substance, that BANKI had received
$6,000 into his account.

      e.   On or about August 14, 2006, a fax was sent from
Iran to wire originators residing in the United States,
containing instructions necessary to wire transfer funds to the
BofA Account of MAHMOUD REZA BANKI, the defendant.

      f.   On or about August 16, 2006, MAHMOUD REZA BANKI,
the defendant, received a wire transfer in the amount of
approximately $30,000 into the BofA Account.

      g.   On or about December 6, 2006, MAHMOUD REZA BANKI,
the defendant, received a wire transfer in the amount of
approximately $30,000 into the BofA Account.

      h.   On or about January 22, 2007, a fax was sent from
Iran to wire originators residing in the United States,
containing instructions necessary to wire transfer funds to the
BofA Account of MAHMOUD REZA BANKI, the defendant.

      i.   On or about January 22, 2007, MAHMOUD REZA BANKI,
the defendant, received a wire transfer in the amount of
approximately $100,000 into the BofA Account.

      j.   On or about November 5, 2007, MAHMOUD REZA BANKI,
the defendant, received a wire transfer in the amount of

approximately $75,000 into the BofA Account.

(Title 50, United States Code, Section 1705;
Title 18, United States Code, Section 371.)

## COUNT TWO
### VIOLATION OF IEEPA AND THE ITR

The Grand Jury further charges:

19.   The allegations set forth in paragraphs 1 through 14 are repeated and realleged as if set forth fully herein.

20.   From at least in or about January 2006 through at least in or about September 2009, MAHMOUD REZA BANKI, the defendant, unlawfully, willfully, and knowingly conducted financial transactions for the purpose of, and which had the effect of, violating, and which facilitated the violation of, the prohibitions set forth in the Executive Orders and the regulations issued under the International Emergency Economic Powers Act, including the Iranian Transactions Regulations set forth in Title 31, Code of Federal Regulations, Part 560, to wit, BANKI provided money transfer services, through the operation of a "hawala" informal value transfer system, to persons in Iran.

(Title 50, United States Code, Sections 1701 to 1706, and
Title 18, United States Code, Section 2.)

**COUNT THREE**

CONDUCTING AN UNLICENSED

MONEY TRANSMITTING BUSINESS

The Grand Jury further charges:

21.   The allegations set forth in paragraphs 1 through 14 are repeated and realleged as if set forth fully herein.

22.   From at least in or about January 2006 through at least in or about September 2009, in the Southern District of New York and elsewhere, MAHMOUD REZA BANKI, the defendant, unlawfully, willfully and knowingly, conducted, controlled, managed, supervised, directed, and owned all and part of an unlicensed money transmitting business affecting interstate and foreign commerce, to wit, BANKI accepted millions of dollars of wire and other transfers into the BofA Account in Manhattan, and subsequently effectuated, and aided and abetted, the transfer of corresponding amounts, less any fees, to residents within Iran, (a) without an appropriate money transmitting license in a State, to wit, New York, where such operation is punishable as a misdemeanor and a felony under State law; (b) while failing to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section; and © knowing that such funds were derived from a criminal offense and were intended to be used to promote and support unlawful activity, to wit,

13

violations of IEEPA and the Executive Orders and regulations attendant thereto.

(Title 18, United States Code, Sections 1960 and 2.)

## COUNT FOUR
### FALSE STATEMENTS

The Grand Jury further charges:

23.   The allegations set forth in paragraphs 1 through 14 are repeated and realleged as if set forth fully herein.

24.   On or about January 16, 2008, in the Southern District of New York and elsewhere, MAHMOUD REZA BANKI, the defendant, unlawfully, willfully, and knowingly, in a matter within the jurisdiction of the executive branch of the Government of the United States, did falsify, conceal and cover up by trick, scheme, and device, material facts and did make materially false, fictitious, and fraudulent statements and representations, to wit, in response to a written request by OFAC that BANKI provide "detailed information" regarding a January 22, 2007 transfer of $100,000 to his BofA Account, including "an explanation of the purpose of the payment, the names, addresses and any other information available on the parties involved in the transaction and a description of the relationships between those parties," which request advised BANKI that "under U.S. Criminal Code (Title 18, Section 1001), knowingly falsifying or concealing a material

fact in your response to this letter is a felony," which may result in fines and/or imprisonment, or both, BANKI stated to OFAC in writing, among other things, that "[t]he payment in question was a gift from the extended family" and that "[t]he payment originally came from one of these family members: 'Ali Alaie' who is an Iranian citizen and resides in Tehran, Iran," whereas, in truth and in fact, the aforementioned payment originated from BANKI's father, a United States citizen.

(Title 18, United States Code, Section 1001(a).)

## COUNT FIVE
### FALSE STATEMENTS

The Grand Jury further charges:

25.   The allegations set forth in paragraphs 1 through 14 are repeated and realleged as if set forth fully herein.

26.   On or about July 31, 2008, in the Southern District of New York and elsewhere, MAHMOUD REZA BANKI, the defendant, unlawfully, willfully, and knowingly, in a matter within the jurisdiction of the executive branch of the Government of the United States, did falsify, conceal and cover up by trick, scheme, and device, material facts and did make materially false, fictitious, and fraudulent statements and representations, to wit, in response to a written request by OFAC that BANKI detail "all payments [he had] made, received, or facilitated in any

15

manner involving Iran since July 1, 2003," which request advised
BANKI that "under U.S. Criminal Code (Title 18, Section 1001),
knowingly falsifying or concealing a material fact in your
response to this letter is a felony," which may result in fines
and/or imprisonment, or both, BANKI stated to OFAC in writing,
among other things, that "[m]y first cousin Ali Alaie kindly
offered to provide the funds for me to purchase my New York real
estate"; that all transfers to BANKI's BofA account during the
period November 20, 2006 through January 16, 2007 were "sent by
Mr. Ali Alaie to my bank account by wire transfers"; and that
BANKI had "not facilitated in any manner payments involving
Iran," whereas, in truth and in fact, the aforementioned payments
originated from BANKI's father, a United States citizen, and
BANKI had knowingly facilitated the transfer of funds to Iran
from the United States through the use of his BofA account.

        (Title 18, United States Code, Section 1001(a).)

            <u>FORFEITURE ALLEGATIONS AS TO COUNTS ONE AND TWO</u>

        27.  As the result of committing the offenses in
violation of Title 18, United States Code, Section 371 and Title
50, United States Code, Section 1705, alleged in Counts One and
Two of this Indictment, MAHMOUD REZA BANKI, the defendant, shall
forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)©
and 28 U.S.C. § 2461, all property, real and personal, that

constitutes or is derived from proceeds traceable to the commission of the offense, including but not limited to the following:

 a. At least $3,400,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offenses.

 b. All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 135 West 4th Street, Unit #1W, New York, New York, 10012, more particularly described as:  Lot 1201 and Block 552.

 c. All United States currency funds or other monetary instruments credited to account numbers 0042 0105 0158, 910 000 7976 4616, 910 000 8269 7686, 910 000 8269 7712, 910 000 8596 8587, 910 000 8596 8626, 910 000 9235 4676, 910 000 9379 7423, 910 000 9379 7449, 910 000 9379 7465, 3810 0804 1874, and 910 001 0212 1870, in the name of Mahmoud Banki, located at Bank of America.

 d. All United States currency funds or other monetary instruments credited to account number EBH-210390, in the name of Mahmoud R. Banki, located at Chase Investment Services Corp.

e.    All United States currency funds or other monetary instruments credited to account number Z72-275735, in the name of Mahmoud Banki, located at Fidelity Investments.

f.    All United States currency funds or other monetary instruments credited to account numbers 849-11383, 849-15041, and 849-11493, in the name of Mahmoud Banki, located at Merrill Lynch.

<u>Substitute Asset Provision</u>

28.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 371 and 981;
Title 28, United States Code, Section 2461;
Title 50, United States Code, Section 1705.)

## FORFEITURE ALLEGATIONS AS TO COUNT THREE

29.   As the result of committing the offense in violation of 18 U.S.C. § 1960, alleged in Count Three of this Indictment, MAHMOUD REZA BANKI, the defendant, shall forfeit to the United States pursuant to 18 U.S.C. § 982, all property, real and personal, involved in the offense and all property traceable to such property, including but not limited to the following:

a.   At least $3,400,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offenses.

b.   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 135 West 4th Street, Unit #1W, New York, New York, 10012, more particularly described as:  Lot 1201 and Block 552.

c.   All United States currency funds or other monetary instruments credited to account numbers 0042 0105 0158, 910 000 7976 4616, 910 000 8269 7686, 910 000 8269 7712, 910 000 8596 8587, 910 000 8596 8626, 910 000 9235 4676, 910 000 9379 7423, 910 000 9379 7449, 910 000 9379 7465, 3810 0804 1874, and 910 001

19

0212 1870, in the name of Mahmoud Banki, located at Bank of America.

d.    All United States currency funds or other monetary instruments credited to account number EBH-210390, in the name of Mahmoud R. Banki, located at Chase Investment Services Corp.

e.    All United States currency funds or other monetary instruments credited to account number Z72-275735, in the name of Mahmoud Banki, located at Fidelity Investments.

f.    All United States currency funds or other monetary instruments credited to account numbers 849-11383, 849-15041, and 849-11493, in the name of Mahmoud Banki, located at Merrill Lynch.

<u>Substitute Asset Provision</u>

30.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

20

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 982 and 1960.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

21

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

## UNITED STATES OF AMERICA

- v. -

## MAHMOUD REZA BANKI,

**Defendant.**

## SUPERSEDING INDICTMENT

(Title 18, United States Code, Sections 2, 371, 1960, 1001,
Title 50, United States Code, Sections 1701 to 1706.)

PREET BHARARA
United States Attorney.

### A TRUE BILL

*Sherry Pachori*

Foreperson.

3/17/10   Superseding indictment filed.

Pitman, U.S.M.J.