```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA      :
                              :
     -against-                 :     No. 10 Cr. 08 (JFK)
                              :       OPINION AND ORDER
MAHMOUD REZA BANKI,           :
                              :
          Defendant.          :
------------------------------X
```

APPEARANCES:

    For the Government:
        E. Danya Perry, Esq.
        Anirudh Bansal, Esq.

    For Defendant:
        Tai H. Park, Esq.
        Eyal Dror, Esq.
        PARK & JENSEN LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Mahmoud Reza Banki's ("Banki" or "Defendant") motion to present testimony at trial from witnesses located in Iran using live videoconferencing. For the reasons that follow, the motion is denied.

## I. Background

In an Indictment filed January 6, 2010, Banki was charged with conspiracy to violate and the violation of various Executive Orders and regulations issued under the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1706, including the Iran Trade Embargo, and with operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960, 2. Specifically, the Government alleges that Banki and unnamed co-

1

conspirators "operated an informal value transfer system known as a 'hawala' [in which] funds are transferred by customers to a hawala operator, or 'hawaladar,' in one country (here, the United States), and then corresponding funds, less any fees, are disbursed to recipients in another country (here, Iran) by foreign hawaladars associated with the U.S.-based hawaladar." (Indictment ¶ 10).

Banki claims that he was not a hawaladar, but merely was the recipient of gifts and other remittances from his family to help him purchase an apartment in New York City.  As such, Banki proposes to offer the testimony of several relatives for the purpose of proving that the transfers which are the subject of the Indictment were family remittances that, according to him, were lawful under the relevant regulations.  Specifically, Banki's father, brother, paternal uncle, maternal uncle, and cousin would testify that they gave him cash gifts and/or arranged for the transfer of money into his United States bank account.[1]  Banki also wishes to elicit testimony from his family's broker in Iran who purportedly arranged the monetary transfers.  All of the proposed witnesses are Iranian citizens, and all currently reside in Iran.  Banki's father and brother

---

[1] In his reply brief, Banki belatedly requests that his mother also be allowed to testify on the subject of family remittances.

are also U.S. citizens, and his paternal uncle is a permanent resident of this country.

Although several of the proposed witnesses are legally able to enter the United States, they will not do so due to concern that they could be arrested as Banki's co-conspirators. Banki requested that the Government grant some of his witnesses "safe passage" to New York so that they could testify without fear of arrest, but the Government has stated that it is not in a position to enter into such an agreement.[2] However, at this time, the Government has not sought provisional arrest warrants for any of the proposed witnesses.

As some or all of the defense witnesses may be unavailable to provide live testimony, Banki now asks the Court to allow them to testify at trial from Iran through live videoconferencing.

## II. Discussion

Federal Rule of Criminal Procedure 26 states that "[i]n every trial the testimony of witnesses must be taken in open court, unless otherwise provided by a statute or by rules adopted under 28 U.S.C. §§ 2072-2077." Congress has approved the use of videoconference technology, with the defendant's

---

[2] The Government represents that it has only declined "safe passage" to Defendant's father, brother, and uncle. The remaining proposed witnesses may not be unavailable if they are otherwise able to travel to the United States.

3

consent, to conduct initial appearances and arraignments. Fed. R. Crim. P. 5(f), 10(c). Testimony through two-way closed circuit television ("CCTV") is also permitted to allow a child to testify from outside the courtroom in proceedings involving offenses against the child. See 18 U.S.C. § 3509(b)(1). However, in 2002, the United States Supreme Court rejected a proposed revision to Rule 26 which would have allowed trial testimony via two-way videoconferencing, see Order of the Supreme Court of the United States, 207 F.R.D. 89, 93-96 (2002), and, to date, Congress has not acted independently to override the Court's decision. Thus, despite provisions for the use of videoconference technology in other stages of criminal proceedings, neither the Criminal Rules nor federal law generally permits videoconference testimony at trial.

Nonetheless, some courts have upheld the use of this technology to allow a witness to testify remotely despite the concomitant limitations on a criminal defendant's confrontation rights. In Maryland v. Craig, the Supreme Court held that the Sixth Amendment does not "categorically prohibit[] a child witness in a child abuse case from testifying against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television." 497 U.S. 836, 840 (1990). However, the Court noted that "a defendant's right to confront accusatory witnesses may be satisfied absent a

4

physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." Id. at 850.  Similarly, the Court of Appeals in United States v. Gigante established that in "exceptional circumstances" trial courts can allow testimony via live videoconference "when this furthers the interest of justice." 166 F.3d 75, 81 (2d Cir. 1999).  In Gigante, the Court allowed a Government witness to testify at trial using two-way CCTV where the witness was too ill to travel to court and was living in an undisclosed location as part of the Federal Witness Protection Program.  Id. at 79.  Notably, in that case the Court found that CCTV testimony would preserve the most vital characteristics of in-court testimony:  "1) the giving of testimony under oath; 2) the opportunity for cross-examination; 3) the ability of the fact-finder to observe demeanor evidence; and 4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence."  Id. at 80.

    The Court is well aware that these cases involved criminal defendants' Sixth Amendment confrontation rights, rights which are not implicated here because it is Defendant, not the Government, who proposes the use of live videoconference testimony.  Although they do not provide direct authority, some

5

of the principles undergirding Craig and Gigante nevertheless present important considerations which bear on the integrity of the overall proceedings.  Specifically, in both Craig and Gigante, safeguards such as the administration of the oath, the opportunity for cross-examination, and the ability of all parties and the jury to observe the witnesses' demeanor ensured that CCTV testimony was as reliable as live testimony.  The Government's interest in confrontation may not be of constitutional proportions, but these cases suggest that the Court should evaluate whether the proposed testimony has similar indicia of reliability as a matter of public policy.

    Unlike any of the cases Defendant cites in support of his motion, including Gigante, this case presents the difficult situation of witnesses who are entirely beyond the reach of the United States government.  This country has no diplomatic relations with Iran and no means to extradite even U.S. citizens residing within its borders.  Even if the Court were to administer the oath to the Iranian witnesses over the computer monitor in real time, there is no way to ensure truth-telling as the Government cannot prosecute the witnesses for perjury or for the making of false statements.[3]  Without the teeth of the

---

[3] It appears that some of the witnesses may not speak English fluently.  It is unclear whether Defendant proposes to use Farsi interpreters in Iran or in the courtroom; to the extent he wants the interpreter to be present with the witnesses in Iran, the

6

penalty of perjury, the oath becomes nothing more than an empty recital.  Thus, the strongest indicator of the reliability of a witness' testimony – the oath – is effectively absent here.

As a secondary concern, since the witnesses are essentially free to say anything without reprisal, the Government's ability to cross-examine them in person and to directly observe the witnesses' demeanor, body language, and interactions in order to gauge the truth of their statements becomes especially important.  However, it is widely acknowledged that "[t]he simple truth is that confrontation through a video monitor is not the same as physical face-to-face confrontation."  United States v. Yates, 438 F.3d 1307, 1315 (11th Cir. 2006); see also Gigante, 166 F.3d at 81 ("There may well be intangible elements of the ordeal of testifying in a courtroom that are reduced or even eliminated by remote testimony.").  The ineffective oath, coupled with the lack of opportunity for in-person cross-examination and observation, makes it extremely difficult to assess the reliability of the proposed witnesses' testimony.

The Court is not persuaded by the example of United States v. Guild, No. 07 Cr. 404, 2008 WL 191184 (E.D. Va. Jan. 17, 2008).  In that case, the trial court's decision to allow the videoconference testimony of defense witnesses located in

---

same concerns regarding the administration of the oath and the Court's ability to ensure faithful and accurate translation arise.

7

Australia rested primarily on the comparative expense of bringing the witnesses to the United States.  It does not appear that costs are a prohibitive factor in this case.  Crucially, however, in Guild, "United States Consular Officers will be available in the remote locations where the witnesses are being videotaped.  These persons will be available to swear the witnesses and provide an assurance that the proceedings maintain the appropriate level of formality and accuracy."  Id. at *4.  Unlike with Australia, there is no United States Embassy or Consulate in Iran, and no realistic way for officers of the United States to travel there to administer the oath or otherwise monitor the proceedings.  Therefore, after careful consideration of the unique circumstances presented by this case, the Court finds that defense witness testimony through live videoconference is not appropriate.

In further support of this decision, the Court notes that Rule 15 of Federal Rules of Criminal Procedure offers a viable alternative by which Defendant could offer the testimony of his family members and/or broker at trial.  Under Rule 15, Defendant "may move that a prospective witness be deposed in order to preserve testimony for trial.  The court may grant the motion because of exceptional circumstances and in the interest of justice."  Fed. R. Crim. P. 15(a).  "It is well-settled that the 'exceptional circumstances' required to justify the deposition

of a prospective witness are present if that witness' testimony is material to the case and if the witness is unavailable to appear at trial." United States v. Johnpoll, 739 F.2d 702, 709 (2d Cir. 1984).

Defendant has not moved to take Rule 15 depositions, so the Court will not opine on the Government's arguments regarding the materiality or exculpatory nature of the proposed testimony.[4] The Court believes, however, that this case presents such "exceptional circumstances" that Rule 15 depositions would be warranted. In that sense, Gigante does not sway the Court in favor of remote testimony using videoconferencing. In Gigante, the district court found that a Rule 15 deposition was not a feasible alternative to CCTV testimony because the procedure would have compromised the secret location of a member of the Witness Protection Program and because defendant himself was too ill to travel to the deposition to view the testimony in person. 166 F.3d at 81. Thus, the district court found CCTV testimony to be preferable because it was more protective of the defendant's confrontation rights than a Rule 15 deposition. Id. However, the Court of Appeals did note that the district court could have appropriately ordered a Rule 15 deposition in lieu of the CCTV testimony. Id.

---

[4] If necessary, the Court will hear Defendant's explanation to the contrary ex parte to avoid early disclosure of his defense.

In contrast, there is no reason why a Rule 15 deposition would be prejudicial to Defendant. It is true that the depositions would be videotaped and replayed for the jury, so jurors would not have the benefit of real-time observation of the witnesses' demeanor. On the other hand, as the parties cannot enter Iran, the depositions would be taken in a neutral location – Defendant has suggested Dubai – where a United States official could directly administer the oath. Both defense and Government attorneys would be able to observe the witnesses contemporaneously, and the Government would be able to cross-examine them in person. This face-to-face arrangement may also provide more of an incentive than videoconferencing for the witnesses to testify truthfully.

Defendant argues that he would be unable to assist his attorneys in deposing his family members because he cannot attend; however, Defendant may be able to participate in the foreign Rule 15 depositions using the telephone or even videoconferencing. As Defendant repeatedly states in support of his request to use such technology at trial, the witnesses to be deposed in this case would testify for the defense, so there would be no Sixth Amendment confrontation issues. Courts have even approved this type of remote access in cases involving Government depositions to be used against the defendant. Cf. United States v. Abu Ali, 528 F.3d 210, 239-40 (4th Cir. 2008)

(finding no Sixth Amendment violation where defendant observed Rule 15 deposition as it occurred in Saudi Arabia over two-way video link, defense attorneys were present with him and at the deposition, and he could communicate with attorneys in Saudi Arabia via cell phone during breaks).  Moreover, the Advisory Committee on Criminal Rules has proposed an amendment to Rule 15 which addresses this very concern.[5]

---

[5] Although the amendment has yet to be adopted, the Advisory Committee has drafted Rule 15(c)(3) as follows:
> The deposition of a witness who is outside the United States may be taken without the defendant's presence if the court makes case-specific findings of all the following:
> (A) the witness's testimony could provide substantial proof of a material fact in a felony prosecution;
> (B) there is a substantial likelihood that the witness's attendance at trial cannot be obtained;
> (C) the witness's presence for a deposition in the United States cannot be obtained;
> (D) the defendant cannot be present because:
>> (i) the country where the witness is located will not permit the defendant to attend the deposition;
>> (ii) for an in-custody defendant, secure transportation and continuing custody cannot be assured at the witness's location; or
>> (iii) for an out-of-custody defendant, no reasonable conditions will assure an appearance at the deposition or at trial or sentencing; and
>
> (E) the defendant can meaningfully participate in the deposition through reasonable means.

Summary of the Report of the Judicial Conference, Committee on Rules of Practice and Procedure, Rules Appendix D-13-D-14 (September 2009).  The Court notes that the most likely objections to this proposal relate to the Sixth Amendment, which is not implicated in this case.

Defendant's main objection to the use of Rule 15 depositions is that they would occasion additional delay of the trial date.  However, this is a problem of Defendant's own making, as he has been aware of his "family remittance" defense and the desirability of his relatives' testimony from the time of his first appearance in court.  See Jan. 11, 2010 Bail Hearing Tr. at 3:19-25 ("[Banki] denies that he had any involvement in any kind of wire transmitting, and the money that he received was money he received from his family . . . his family in Iran can send him money to invest in an apartment and invest in stocks and bonds here in the United States."); id. at 4:1-4; id. at 22:2-12.  He could have requested permission to take Rule 15 depositions as early as January 11, 2010 when the Court set the trial date, but has not done so.  If an adjournment of the trial date is required in order to undertake the necessary preparations, Defendant is free to seek one.  The fact that Defendant does not want to prolong his term of pre-trial detention in order to take Rule 15 depositions, while understandable, does not amount to prejudice necessitating the Court to entertain testimony of uncertain reliability. Regardless of whether Defendant chooses to pursue foreign depositions, Rule 15 is in fact available to him, and as such, the extraordinary use of videoconference testimony is unwarranted.

## III. Conclusion

Defendant's motion to present testimony through live videoconferencing is denied.

SO ORDERED.

Dated:     New York, New York
           March 23, 2010

                                    _____
                                         John F. Keenan
                                    United States District Judge