UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                            :
UNITED STATES OF AMERICA        :
                                            :      No. 10 Cr. 08 (JFK)
       v.                            :
                                            :
MAHMOUD REZA BANKI,           :
                                            :
               Defendant.   :
                                            :
-------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
MAHMOUD REZA BANKI'S MOTION TO STRIKE SURPLUS <u>AND
PREJUDICIAL LANGUAGE FROM SUPERSEDING INDICTMENT</u>**

        ARNOLD & PORTER LLP
           399 Park Avenue
           34thh Floor
           New York, New York  10022
           (212) 715-1000

        PARK & JENSEN LLP
           630 Third Avenue
           Seventh Floor
           New York, New York  10017
           (646) 200-6300

*Attorneys for Defendant Mahmoud Reza Banki*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                       :
UNITED STATES OF AMERICA                               :
                                                       :
          v.                                           :
                                                       :   No. 10 Cr. 08 (JFK)
MAHMOUD REZA BANKI,                                    :
                                                       :
                              Defendant.               :
                                                       :
-------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MAHMOUD REZA BANKI'S MOTION TO STRIKE SURPLUS AND PREJUDICIAL LANGUAGE FROM THE SUPERSEDING INDICTMENT

Defendant Mahmoud Reza Banki moves, pursuant to Federal Rule of Criminal Procedure 7(d), to strike surplus and prejudicial language from the Superseding Indictment.[1] The Superseding Indictment alleges that Mr. Banki provided money transfer services to individuals in Iran through the operation of a hawala which moved $3.4 million from New York to Iran, in violation of the Iranian Transaction Regulations ("ITR"). Mr. Banki is not charged with any terrorism-related offense, nor are the charges against him in any way related to the Iranian government. Nonetheless, the Superseding Indictment is replete with references to the President's power to respond to national security threats under the International Emergency Economic Powers Act ("IEEPA") and

---

[1] It is Mr. Banki's position that this motion does not require resolution until the end of trial when the indictment will be formally submitted to the jury. However, in the unlikely event that the government plans to utilize any of the irrelevant and prejudicial material from the indictment in its opening or direct case -- particularly if the government plans to refer to the President's powers under the IEEPA, the government of Iran, or a theory of *importation* of services from Iran -- then this motion would require resolution before that happens.

the ITR's prohibitions on commercial dealings with the government of Iran. This information is irrelevant and risks creating the highly prejudicial misperception that this case may involve terrorism or the provision of support for the government of Iran.

In addition, the Superseding Indictment recites lengthy passages from statutes and regulations (or portions thereof) which the government does not accuse Mr. Banki of violating, thereby presenting the risk of misleading the jury into convicting Mr. Banki for conduct not charged in the indictment. A number of these irrelevant legal provisions prohibit the *importation* of services from Iran; because Mr. Banki is charged only with *exportation* of services from the United States to Iran, but the evidence at trial will also deal with transfers flowing from Iran to the United States, the inclusion of these provisions is particularly confusing and prejudicial. Accordingly, Mr. Banki respectfully requests that the Court strike such surplus and prejudicial language from the Superseding Indictment.

Attached hereto as Exhibit A is a copy of the Superseding Indictment with the language that Mr. Banki moves to strike designated for redaction.[2]

## I. BACKGROUND: THE INDICTMENT'S REFERENCES TO NATIONAL SECURITY THREATS, TO THE GOVERNMENT OF IRAN, AND TO IMMATERIAL REGULATIONS

Paragraphs 1, 2, and 3 of the Superseding Indictment are principally concerned with (1) the President's powers to act under the IEEPA in order to protect the United States against extraordinary external threats to national security and (2) President

---

[2] Counsel for Mr. Banki proposed all of the redactions found in Exhibit A to the government (with the exception of the redactions to paragraph 12), and it was the government's position that no changes to the Superseding Indictment were necessary.

2

Clinton's 1995 declaration of a national emergency, pursuant to the IEEPA, with respect to the government of Iran. Superseding Indictment at ¶ 1 (The [IEEPA] . . . grants to the President of the United States a broad spectrum of powers to 'deal with *any unusual and extraordinary threat*, which has its source in whole or in substantial part outside the United States, to *the national security, foreign policy, or economy of the United States*, if the President declares a *national emergency* with respect to such threat."); ¶ 2 (stating that the President is authorized under the IEEPA to "prevent or prohibit, any . . . transactions involving, any property *in which any foreign country* or a national thereof *has any interest*" and to "impose economic sanctions to address particular emergencies"); ¶ 3 (quoting Executive Order 12957, issued by President Clinton on March 15, 1995, which stated that "the actions and policies of the Government of Iran constitute an *unusual and extraordinary threat to the national security*, foreign policy, and economy of the United States" and declared "a national emergency to deal with that threat") (emphases added).

In addition, although this case has nothing to do with the government of Iran, the subparagraphs of paragraph 6 contain additional references to the government of Iran, extensively quoting from the ITR's prohibitions on commercial dealings with the Iranian government. Superseding Indictment ¶ 6(i) ("31 C.F.R. § 560.201 prohibits the 'importation into the United States of any goods or services of Iranian origin or owned or controlled by *the Government of Iran*"); ¶ 6(ii) ("31 C.F.R. § 560.204 prohibits 'the exportation, reexportation, sale or supply . . . of any goods, technology or services to Iran or *the Government of Iran* . . . including the exportation . . . of any goods, technology, or services to a person . . . with knowledge that (a) Such goods, technology or services are

3

intended specifically for supply . . to Iran or *the Government of Iran*; or (b) Such goods . . . are intended specifically for use in . . . goods, technology or services to be . . . supplied . . . exclusively or predominantly to Iran or *the Government of Iran*'"); ¶ 6(iv) ("31 C.F.R. § 560.206(a) prohibits a United States person . . . from engaging 'in any transaction . . . related to (1) Goods or services of Iranian origin or owned or controlled by *the Government of Iran*; or (2) Goods, technology or services for exportation . . . to Iran or *the Government of Iran*'") (emphases added).

Finally, although this case is about the export of services *to* Iran, there are numerous references in the indictment to *imports*. In particular, paragraphs 6(i), 6(ii), 6(iv), and 12 recite legal provisions prohibiting the *importation* of goods or services from Iran, even though Mr. Banki is charged only with the export of services to Iran. See, e.g., Superseding Indictment ¶ 12 (referring to a license from OFAC "to import from Iran").

**II.   ARGUMENT**

    **A.   Applicable Law**

Federal Rule of Criminal Procedure 7(d) authorizes a court to strike surplus language from an indictment upon a defendant's motion as "a means of protecting the defendant against immaterial or irrelevant allegations . . . which may, however, be prejudicial." Fed. R. Crim. P. 7(d) Committee Notes. A court should grant such a motion where the challenged portions of the indictment are both irrelevant and prejudicial to the defendant.[3] United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990); see also

---

[3] Unfair prejudice to a criminal defendant occurs where some information or evidence may "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 174 n.1 (1997).

United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009) (striking portion of indictment that was "irrelevant to the crime charged and prejudicial"). The government may defeat a motion to strike by showing that evidence of an allegation in the indictment "is admissible and relevant to the charge." Scarpa, 913 F.3d at 1013 (internal quotation marks and citation omitted).

### B.  The Court Should Strike the References to National Security Threats, the Government of Iran, and the ITR's Importation Provisions

In order to prevent unfair prejudice to Mr. Banki, the portions of Paragraphs 1, 2, 3, 6, and 12 of the Superseding Indictment specified in Exhibit A should be stricken. Those portions of the indictment refer to: (1) the President's powers under the IEEPA to protect the United States against external threats to the national security, foreign policy, or economy, and President Clinton's 1995 declaration of a national emergency, pursuant to the IEEPA, with respect to the government of Iran; (2) the specific prohibitions of the ITR on commercial dealings with the government of Iran; and (3) unnecessary legal sections which might be construed by the jury as allowing for a theory of conviction which is in fact not encompassed by this case. Without such redactions, the jury may erroneously conclude that this case involves allegations that Mr. Banki, through the operation of a hawala, transferred money to Iran in order to provide support for terrorism or the government of Iran. Indeed, after the repeated references to national security threats and the government of Iran in paragraphs 1, 2, 3, and 6, a reader of the Superseding Indictment naturally expects allegations of terrorism or collaboration with the government of Iran to follow.

Mr. Banki would suffer considerable unfair prejudice if the jury were to confuse the language of the Superseding Indictment with an accusation that Mr. Banki posed a national security threat by providing support for terrorism or the government of Iran. The United States does not currently have diplomatic relations with the Iranian government, which President Obama has labeled an "outlier state" (the successor term to President George W. Bush's label for Iran as a "rogue state") in part because of Iran's failure to comply with the Nuclear Nonproliferation Treaty. The U.S. government's concerns about Iran are extensively covered in the news media.[4] And the news media have also reported on concerns that the hawala system may be used to provide financing for terrorist activity.[5]

These passages are not only prejudicial, they are also irrelevant. Nowhere does the government allege that Mr. Banki provided money transfer services to, or otherwise had commercial dealings with, the Iranian government. Rather, the government charges Mr. Banki only with providing money transfer services to individuals and/or businesses in Iran. See, e.g. Superseding Indictment ¶ 20. Nor are the President's powers to protect against threats to national security under the IEEPA relevant to the government's charges against Mr. Banki; the details of that statute have no "tendency to make the existence of

---

[4] See, e.g., Nazila Fathi and David E. Danger, *Decrying U.S., Iran Begins War Games*, New York Times at A10 (Apr. 21, 2010); David E. Sanger and Thom Shanker, *Obama's Nuclear Strategy Intended as a Message*, New York Times at A6 (Apr. 6, 2010); Peter Baker, *Obama Expects U.N. Sanctions on Iran to Be Approved Soon*, New York Times at A9 (Mar. 30, 2010).

[5] See, e.g., Meenakshi Ganguly, *A Banking System Built for Terrorism*, Time (Oct. 5, 2001) (available at http://www.time.com/time/world/printout/0,8816,178227,00.html) ("Welcome to the world of hawala, an international underground banking system that allows money to show up in the bank accounts or pockets of men like hijacker Mohammed Atta, without leaving any paper trail.").

any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401.

Moreover, the Superseding Indictment's repeated references to statutory and regulatory provisions not at issue in this case is also inappropriate because such *legal* surplusage has no place in an indictment. An indictment "must be a plain, concise, and definite statement of the *essential facts* constituting the offense charged." Fed. R. Crim. P. 7(c)(1) (emphasis added). Although each count of the indictment "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated," id., and the indictment may track the language of the statute charged, see Hamling v. United States, 418 U.S. 87, 117 (1974), there is no reason for an indictment to recite the entirety of a statute or regulation, particularly those provisions which the defendant is *not* alleged to have violated. See United States v. Dorfman, 335 F. Supp. 675, 679 (S.D.N.Y. 1971) (striking surplus statutory language from indictment where it did not accurately reflect the charge against the defendant and therefore may have been "duplicitous"). Indeed, the government itself has pointed out that the law "is the exclusive province of the Court," Gov't Reply Mem. Supp. Mot. Preclude Expert Test. (filed May 5, 2010) at 2 (citing Hygh v. Jacobs, 961 F.2d 359, 363-64 (2d Cir. 1992)), and the jury can only be confused by the recitation in the indictment of laws (or portions thereof) which the defendant is not even accused of violating.

Accordingly, because of the prejudice here, any references to an "extraordinary threat," a "national emergency," or "national security" should be stricken. In addition, because Mr. Banki is not accused of any activities or transactions involving the government of Iran, all references in paragraph 6 to "the Government of Iran" should be

7

stricken from the indictment as prejudicial legal surplusage.  See Superseding Indictment ¶¶ 6(i), (ii), (iv).  And because Mr. Banki is charged only with providing services from the United States to individuals in Iran, but evidence will be presented concerning the flow of funds from Iran to Mr. Banki in the United States, the language of paragraphs 6 and 12 concerning the *importation* of "goods or services of Iranian origin or owned or controlled by the government of Iran" is irrelevant and particularly likely to confuse the jury.  See id. ¶ 6(i) (reciting the text of 31 C.F.R. § 560.204); ¶ 6(iv) (referring to "[g]oods or services of Iranian origin or owned or controlled by the Government of Iran"); ¶ 12 (referring to a license from OFAC to "import from Iran").  Indeed, because there will be considerable evidence at trial concerning the flow of transfers from Iran to the United States, it is difficult to overstate the risk of misleading the jury into convicting Mr. Banki of an offense not charged by including statutory language prohibiting the *import* of services from Iran.  In addition, any reference to the import or export of "goods" or "technology" in paragraph 6 is irrelevant and prejudicial, as Mr. Banki is charged only with the export of *services* to Iran.  See id. ¶¶ 6(i), (ii), (iv).

In short, the Superseding Indictment's references to the President's powers to protect against threats to national security under the IEEPA, the government of Iran, and the recitation of provisions of statutes and regulations that Mr. Banki is not alleged to have violated -- particularly those regulations which prohibit the *import* of services from Iran, an offense with which he is not charged -- are wholly irrelevant and present the risk of significant unfair prejudice to Mr. Banki.  Therefore,  those portions of the Superseding Indictment should be stricken in accordance with the designated redactions in accompanying Exhibit A.

### III. CONCLUSION

For the foregoing reasons, Mr. Banki respectfully requests that the Court strike from the Superseding Indictment the language that is designated for redaction in accompanying Exhibit A.

Dated: May 7, 2010              Respectfully submitted,

                                    ARNOLD & PORTER LLP

                                    By:   /s/Baruch Weiss
                                        Baruch Weiss
                                        Amalia Jorns
                                        Sheri L. Shepherd
                                        399 Park Avenue
                                        34th Floor
                                        New York, New York  10022
                                        (212) 715-1000

                                    PARK & JENSEN LLP
                                    Tai H. Park
                                    Eyal Dror
                                    630 Third Avenue
                                    Seventh Floor
                                    New York, New York  10017
                                    (646) 200-6300

                                  *Attorneys for Defendant Mahmoud Reza Banki*