UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA          :
                                  :
     -against-                    :      No. S1 10 Cr. 08 (JFK)
                                  :      **MEMORANDUM OPINION AND ORDER**
MAHMOUD REZA BANKI,               :
                                  :
          Defendant.              :
------------------------------X

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by the Government to preclude certain testimony of Defendant's proposed expert witnesses at trial scheduled to begin on May 10, 2010.  For the reasons that follow, the motion is granted in part and denied in part.

### I.  Background

In a Superseding Indictment filed March 17, 2010, Mahmoud Reza Banki ("Banki" or "Defendant") is charged with:  (1) conspiracy to violate and the violation of various Executive Orders and regulations issued under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, including the Iranian Transactions Regulations ("ITR"), 31 C.F.R Part 560, which prohibit "the importation into the United States of any goods or services of Iranian origin or owned or controlled by the Government of Iran" and "the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran"; (2)

1

operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960, 2; and (3) making materially false statements in response to inquiries by the Office of Foreign Assets Control ("OFAC") in violation of 18 U.S.C. § 1001(a).

As the conduct underlying the IEEPA/ITR charges, the Government alleges that Banki and unnamed co-conspirators "operated an informal value transfer system known as a 'hawala' [in which] funds are transferred by customers to a hawala operator, or 'hawaladar,' in one country (here, the United States), and then corresponding funds, less any fees, are disbursed to recipients in another country (here, Iran) by foreign hawaladars associated with the U.S.-based hawaladar." (Indictment ¶ 10).  Banki claims that the transfers which are the subject of the Superseding Indictment were family remittances that, according to him, were lawful under the relevant regulations.

As the conduct underlying the false statement charges, the Government alleges that in response to two requests from OFAC that Banki provide detailed information about various money transfers, Banki claimed that the money was a gift from his cousin, who is an Iranian citizen, when in fact that money came from his father, who is a U.S. citizen.  The Government further alleges that Banki falsely stated that he had not facilitated any transfer of funds from the United States to Iran.

In a letter dated April 19, 2010, Banki identified R. Richard Newcomb and Daniel Gill as expert witnesses he expects to testify at trial about the operation of the ITR and the hawala system described in the Superseding Indictment, respectively.  The Government contests the relevance of Mr. Newcomb's proffered testimony and also seeks to limit that of Mr. Gill.

### I.   Testimony of R. Richard Newcomb

R. Richard Newcomb served as the Director of OFAC from 1987 through 2004, where he was involved with the development and implementation of the ITR.  Mr. Newcomb is currently a practicing attorney and is the Chair of the International Trade Practice Group at the law firm DLA Piper.  Mr. Newcomb's testimony is offered on two general subjects:  (1) whether Defendant willfully violated the IEEPA/ITR; and (2) whether Defendant made materially false statements to OFAC.

### A.   Willfulness

In order to make out the willfulness element of the IEEPA/ITR charge, the Government must prove that Defendant "acted with knowledge that his conduct was unlawful."  United States v. Homa Int'l Trading Corp., 387 F.3d 144, 147 (2d Cir. 2004) (quoting Bryan v. United States, 524 U.S. 184, 192 (1998)).  To defend against the allegations that Defendant knowingly violated the ITR, the defense proposes that Mr.

Newcomb testify that: (1) "during the relevant time period OFAC's policy was not to regulate non-commercial family transfers"; (2) "[w]hen the ITR were promulgated, there was nothing in this policy that specifically required that the money move through United States depository institutions"; (3) "remittances are a significant part of the relationships between expatriate communities and family members in their home countries." (Def. April 19, 2010 Expert Disclosure Letter at 1-2). This testimony forms the basis of his ultimate opinions, namely that due to OFAC's under-enforcement of the ITR and the customary nature of family transfers to and from Iran, "a member of the Iranian-American community could have seen family remittances taking place on a regular basis," "could reasonably have concluded that there was nothing unlawful in engaging in such remittances," and "could reasonably conclude that the policies and practices in place with respect to family remittances also applied to any transactions ordinarily incident and necessary to effectuate any family remittance transaction." (Id. at 2-3).

Under Rule 702 of the Federal Rules of Evidence, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may

testify thereto in the form of an opinion or otherwise." There
is no contention that Mr. Newcomb is unqualified to testify
about OFAC's policies and procedures during his tenure as
Director. Instead, the Government objects on grounds of
relevance. Indeed, the Second Circuit has specified that
"evidence regarding the knowledge of individuals other than the
defendant should be admitted only if there is some other
evidence in the record – concerning, for example, the nature of
the [crime] or the relationship of the parties – from which to
conclude that the defendant would have the same knowledge."
United States v. Kaplan, 490 F.3d 110, 120 (2d Cir. 2007). Mr.
Newcomb's testimony that OFAC ignored aspects of the very law it
was tasked with enforcing, standing alone, sheds no light on
Defendant's subjective knowledge of the legality of his alleged
money transfers; absent Defendant's own testimony or other
direct evidence that he believed his conduct to be lawful, there
is no basis on which the jury could properly infer anything
about Defendant's state of mind from the opinion of this third
party expert witness who likely has never communicated with the
Defendant. Cf. United States v. Ingredient Tech. Corp., 698
F.2d 88, 97 (2d Cir. 1983) ("[P]rior cases on willfulness
consistently require factual evidence of the defendant['s] state
of mind to negate willfulness under any theory."). Thus, if,
but only if, there is prior evidence in the record to establish

a factual link between Defendant's state of mind and OFAC's
under-enforcement policy, then Mr. Newcomb may testify that,
based on his specialized knowledge of the inner workings of the
agency and the relevant expertise he gained in shaping and
implementing the ITR, at the time of his service, OFAC chose not
to regulate non-commercial family transfers involving Iran.
That testimony would be relevant in that it may aid the jury in
weighing the credibility of Defendant's alleged lack of
knowledge regarding the legality of his conduct.  To be clear,
Mr. Newcomb may not testify about the legal requirements of the
ITR or any other OFAC regulations, and I will give the jury a
limiting instruction to that effect if necessary.  Furthermore,
in support of the testimony that OFAC did not closely police
family remittances, Mr. Newcomb may explain to the jury his
opinion that remittances are significant to expatriates and
their families who reside in home countries singled out for
regulation by OFAC.

     The Government points out that Mr. Newcomb did not work at
OFAC during the time period charged in the Superseding
Indictment, and the prosecutors may certainly bring this point
out on cross-examination.  If indeed OFAC's policies have
changed, as may be evidenced by the very existence of this case,
the Government may offer such rebuttal testimony.

However, the defense may not draw out from Mr. Newcomb's factual testimony any opinion about what a member of the Iranian-American community, or Defendant in particular, "could have seen" or "could have reasonably concluded." To begin with, that testimony is purely speculative. There is no suggestion by the defense that Mr. Newcomb is himself a member of the Iranian-American community or that he has specific knowledge about that community's beliefs regarding the legality of money transfers to and from Iran. Moreover, theorizing about what any given member of the Iranian-American community could have thought simply is not a proper topic for expert testimony, as it has nothing to do with Mr. Newcomb's education and experience.

Additionally, Mr. Newcomb may not testify that the family remittance exception to the ITR as promulgated did not require money to pass through United States depository institutions. Although the defense claims that this testimony relates to OFAC's "policies," it may more accurately be characterized as Mr. Newcomb's construal of the law OFAC enforces. The proper interpretation of 31 C.F.R. § 560.516(a) – the family remittance exception – and its application to this case is a hotly contested legal matter to be decided solely by the Court. While Mr. Newcomb's opinion that the law as written did not require action by a United States depository institution may be relevant to the Court's charge of law, it can have no bearing on any

7

factual matter before the jury.[1]  It is not for the jury to
decide what the ITR means and whether its language requires or
simply permits transfers by U.S. banks; instead, the jury's task
is only to determine whether Defendant's alleged conduct
violates the law as laid out by the Court.  Depending on how the
Court construes the family remittance exception, Mr. Newcomb's
testimony could be in stark contrast with the charge of law,
leaving the jury confused as to what the law is or from whom to
take competing instructions.  See Hygh v. Jacobs, 961 F.2d 359,
364 (2d. Cir. 1992) ("Whereas an expert may be uniquely
qualified by experience to assist the trier of fact, he is not
qualified to compete with the judge in the function of
instructing the jury."); Ingredient Tech. Corp., 698 F.2d at 97
("[I]t would be very confusing to a jury to have opposing
opinions of law admitted into evidence as involving a factual
question for them to decide. . . .  Questions of law are for the
court.").

**B.  Materiality**

With regard to the false statement charges, the Government
must prove that Defendant's allegedly false statements were

_____

[1] Indeed, the extensive memorandum of law submitted by Defendant
in support of his request that the jury instruction on the issue
of family remittances omit any reference to United States
depository institutions further confirms that this topic is
beyond the ken of the jury, and thus not a proper area of expert
testimony.

material – i.e., they were "capable of influencing the decision" of the agency to which the statements were addressed.  United States v. Gaudin, 515 U.S. 506, 509 (1995).  On the question of materiality, Mr. Newcomb proposes to testify that because OFAC's policy and practice was not to regulate family remittances, and because the ITR do not define the term "family," "it should not be material to OFAC whether family funds originated with a cousin versus a parent." (Id. at 3).

    As a former decision-maker at OFAC, Mr. Newcomb is properly qualified to opine as to whether the identity of a family member involved with remittances from Iran would or would not influence the agency's decision to regulate such transfer.  This testimony is relevant to the jury's factual determination regarding the materiality of Defendant's responses to OFAC's inquiries.  To be clear, Mr. Newcomb may not testify about his interpretation of the statute, including the term "family," but he may testify that, in light of OFAC's policy to under-enforce non-commercial family transfers, the identity of the family member making such remittance would not be material.  If the current OFAC regime takes a different view of the materiality of Defendant's statements, the Government may bring this out in cross-examination or offer rebuttal testimony.

## II.  Testimony of Daniel Gill

Daniel Gill served as a Special Agent with the FBI from 1983 to 2006.  While at the FBI, Mr. Gill worked in the New York Office's Asset Forfeiture Unit and assisted in a number of government forfeiture investigations in securities fraud, organized crime, white-collar crime, and counter-terrorism cases.  He currently uses his experience in forensic accounting as a consultant.

Mr. Gill proposes to testify that the conduct charged in the Superseding Indictment is not consistent with a hawala because:  (1) Defendant purportedly did not have a ready pool of cash in the United States for disbursements as one would expect of a hawaladar; (2) there is no evidence of disbursements from his account or settlement payments; and (3) the amount of money at issue in this case is too small to make the operation of a hawala profitable.

Again, there is no objection under Rule 702 that Mr. Gill lacks the training or experience to testify as an expert on hawalas.  In fact, Mr. Gill has previously testified as an expert witness on the subject of hawalas for the Government in a criminal prosecution in the Eastern District of New York.  See United States v. Abad Elfgeeh & Aref Elfgeeh, No. 03 Cr. 133, Trial Tr. at 495:9-496:10, Def. Opp. to Motion to Preclude, Ex. B.  It is the Government's position that Mr. Gill's testimony

will impermissibly tell the jury what verdict to reach; this argument is not persuasive.  Under Rule 704, an expert's testimony may "embrace an ultimate issue to be decided by the trier of fact" as long as it does not express an opinion on the defendant's mental state as an element of the crime charged. Fed. R. Evid. 704(a)-(b).  As I understand it, Mr. Gill will explain how a hawala functions, describe some classic characteristics of a hawala, and then compare the conduct alleged in this case to his definition of hawala to demonstrate what, in his opinion, is an inconsistency between the charges and the facts.  There is no suggestion that he will opine on Defendant's mental state, and thus the testimony does not run afoul of Rule 704.  Moreover, Mr. Gill's testimony may have little bearing on the ultimate factual issue to be decided, as it is conceivable that the jury could find that Defendant's alleged conduct does not share the hallmarks of a traditional hawala, but that Defendant nonetheless provided money transferring services in violation of the IEEPA/ITR.

The Government is free to offer the opinion of its own expert to prove that Defendant's actions are consistent with their understanding of a hawala.  Expert testimony about this kind of informal money transfer system, which is likely foreign to most jurors, will help the jury to determine whether the

11

conduct charged was in fact a hawala, and whether that conduct –
hawala or not – violates the IEEPA/ITR.

### III. Conclusion

The Government's motion to preclude expert testimony is
granted in part, denied in part.  Mr. Newcomb may testify only
as to the subjects defined herein; Mr. Gill's proposed testimony
is admissible in its entirety.

SO ORDERED.

Dated:    New York, New York
          May 10, 2010
          *at 9:10 A.M.*

                                        John F. Keenan
                                 United States District Judge

12