UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA          :
                                  :
     -against-                    :        No. S1 10 Cr. 08 (JFK)
                                  :        **MEMORANDUM OPINION AND ORDER**
MAHMOUD REZA BANKI,               :
                                  :
            Defendant.            :
------------------------------X

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Mahmoud Reza Banki ("Banki" or "Defendant") for a judgment of acquittal on Count Three of the Superseding Indictment pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  For the reasons that follow, the motion is denied.

## I. Background

In a Superseding Indictment filed March 17, 2010, Banki is charged with:  (1) conspiracy to violate and the violation of various Executive Orders and regulations issued under the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701–1706, including the Iranian Transactions Regulations, 31 C.F.R Part 560, which prohibit "the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran"; (2) operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960, 2; and (3) making materially false statements in response to

inquiries by the Office of Foreign Assets Control in violation of 18 U.S.C. § 1001(a).  Specifically, Count Three of the Superseding Indictment alleges that Banki

> conducted, controlled, managed, supervised, directed, and owned all and part of an unlicensed money transmitting business affecting interstate and foreign commerce, to wit, Banki accepted millions of dollars of wire and other transfers into the [Bank of America] Account in Manhattan, and subsequently effectuated, and aided and abetted, the transfer of corresponding amounts, less any fees, to residents within Iran.

(Indictment ¶ 22).

After the Government rested its case on May 18, 2010, Defendant made an oral motion for a judgment of acquittal as to all five counts in the Superseding Indictment and filed a supporting memorandum of law regarding Count Three.  I denied the motion with respect to Counts One, Two, Four, and Five and reserved decision as to Count Three in order to review case law cited by the defense.  Defendant argues that Count Three should be dismissed because:  (1) the Government has not introduced sufficient evidence to prove that Banki acted as a principal of the alleged money transmitting business; and (2) there is no legal basis for aiding and abetting liability under 18 U.S.C. § 1960.

2

## II. Discussion

### A.   Legal Standards

Pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, "[a]fter the government closes its evidence . . . the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  While respecting the jury's right "to determine credibility, weigh the evidence, and draw justifiable inferences of fact," United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000), the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "Put another way, '[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" United States v. Temple, 447 F.3d 130, 136 (2d Cir. 2006) (quoting United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999)).  If, on the other hand, the totality of the evidence indicates that "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter." Autuori, 212 F.3d at 114.

The Superseding Indictment cites to both 18 U.S.C. § 1960 and § 2 as the statutes governing Count Three.  Section 1960 attaches criminal liability to any person who "knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business."  18 U.S.C. § 1960(a).  Under 18 U.S.C. § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

### B.   Principal Liability

Defendant bypasses the allegations in Count Three regarding principal liability for the operation of an unlicensed money transmitting business, and argues instead that the Government is proceeding on an aiding and abetting theory as to Count Three.  As the sole basis for this argument, Defendant cites to statements in the Government's opening in which the prosecutor told the jury that "the evidence will make clear to you beyond a reasonable doubt that Mr. Banki knowingly facilitated the transfer of millions of dollars to Iran in violation of . . . the laws against unlicensed money transmitting."  May 12, 2010 Trial Tr. at 166.  However, a single reference to the word "facilitate" in the prosecution's opening statement does not ipso facto invalidate evidence introduced to support principal

4

liability, nor does it restrict the Government to an aiding and abetting theory.

Although the prosecutor may well have used the word "facilitate" to refer to the aiding and abetting aspect of Count Three, his opening statement further explained that Defendant "is also charged with operating an unlicensed money transmitting business," id. at 156, that Defendant "was using his account at Bank of America to transfer money to Iran for other people," id. at 161, and that Defendant "played an important role in this illegal money transfer network, a role without which this network could not have succeeded." Id. at 156. These comments adequately informed the jury that Defendant is charged with operating an unlicensed money transmitting business as a principal.

Furthermore, the Government followed up its opening statement by introducing various forms of evidence in support of the allegation that Defendant acted as a principal who operated all or part of a money transmitting business. For example, among other evidence, the Government put on Immigration and Customs Enforcement Special Agent Brian Carlucci who interviewed Defendant about money transfers and testified that Defendant told him that the transfers came from Iranians in the United States who needed money sent to Iran. See, e.g., id. at 293 ("Mr. Banki explained that that transfer had come from his

family and that the people that were sending the money to him
were Iranian people that needed to get money to Iran."); id. at
293-94 ("[H]e specifically said that was money coming from my
cousin and the people send it to his account so they can get it
to Iran."); id. at 297 ("[F]or the people sending him money it
was the only way they were able to get the money to Iran.").
The Government introduced an email from Defendant's uncle in
which he informed the Defendant that "a friend of mine wants to
send 6000 USDA to Iran.  I asked him to send the money to that
account you gave me before.  I hope you declare it when you get
the report."  Gov't Ex. 100-12.  Additionally, the Government
introduced the expert testimony of Dr. Matthew Levitt regarding
the key role Defendant and his Bank of America account could
have played in the operation of the alleged hawala.  See, e.g.,
May 14, 2010 Trial Tr. at 520 ("Q. [D]oes that pooling [account]
have to belong to the broker or could it be in the possession of
somebody else?  A. It could be in the possession of somebody
else, but it would have to be somebody else who has a key
relationship, kind of an agent relationship with the broker.");
id. at 521 ("The system can't function if there's no pooling
account.  The sender has to have someplace to send money here in
the United States where it stays in the United States . . . .
You have a pooling account here from which you can disburse
money on this side if you need it."); id. at 526 ("Q. Now, the

person . . . which is identified in the schematic as pooling
account/U.S. receiver, how essential is that person to the
functioning of this network?  A. Again, this is critical. . . .
The person is both the recipient . . . and is also the pooling
account.  But in the function as the pooling account, this
individual is either a broker in and of himself or an agent in
this case of the broker over here.").  Although we do not yet
have the benefit of defense evidence, the Government's case is
certainly more than "nonexistent" or "meager," and there is
ample evidence in the record on which a rational jury could
convict Defendant of operating an unlicensed money transmitting
service.

Finally, since the Superseding Indictment charges Defendant
as both a principal and an aider and abettor, the jury may
consider the foregoing evidence, and convict if they so find,
under either theory.  If the Government did somehow restrict
itself to an aiding and abetting theory on the basis of its
opening statement – which it did not – "an indictment charging
aiding and abetting may be proven by demonstrating that the
aider and abettor was in fact a principal." United States v.
Knoll, 16 F.3d 1313, 1323 (2d Cir. 1994); see United States v.
Becerra, 97 F.3d 669, 672 (2d Cir. 1996); United States v.
Oates, 560 F.2d 45, 55 n.6 (2d Cir. 1977).  Moreover, if the
statute prohibits aiding and abetting a violation of Section

1960, the jury could still consider and convict Defendant on Count Three as a principal.  See Griffin v. United States, 502 U.S. 46, 56-57 (1991) ("[W]hen a jury returns a verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." (quoting Turner v. United States, 396 U.S. 398, 420 (1970))); United States v. Schiff, 801 F.2d 108, 114 (2d Cir. 1986) ("Indictments worded in the conjunctive, charging violations of statutes worded in the disjunctive, can be supported by proof of either of the conjoined means of violating the act.").  However, as discussed below, I find no legal bar to an aiding and abetting theory under Section 1960, and even if such a bar did exist, the Government has introduced sufficient evidence to sustain a guilty verdict on Count Three against Defendant as a principal.

### C.   Aider and Abettor Liability

Defendant also argues that Section 1960 belongs in a small subset of crimes for which there can be no aiding and abetting liability because the statute is intended to apply only to a person who has a leadership or managerial role in the money transmitting business.  Defendant cites two cases specifically concerning Section 1960, neither of which supports this contention.  In United States v. Talebnejad, 460 F.3d 563, 572 (4th Cir. 2006), the Fourth Circuit read Section 1960 to mean

that "[c]riminal liability is thus clearly directed toward those who are, in some substantial degree, in charge of the operation; the statute does not reach mere employees." However, this statement related to the Court's determination that the Government is not required to prove that relevant state law imposes a duty to obtain a money transmitting license in order for a jury to convict under Section 1960. Id. Nothing in Talebnejad addresses aider and abettor liability under Section 1960. Nor is there any reason that the Fourth Circuit's decision to remove an element of proof from the Government's Section 1960 case-in-chief necessarily implies that an aider and abettor is exempt from prosecution. United States v. Elfgeeh, 515 F.3d 100, 133 (2d Cir. 2008), which involved a district court's failure to instruct the jury that the Government must prove that defendant knew the money transmitting business to be unlicensed, has no relevance to aiding and abetting liability.

Defendant also attempts to compare the language of Section 1960 to that of the Racketeering Influenced and Corrupt Organizations ("RICO") statute[1] and the continuing criminal

---

[1] See 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with [a RICO enterprise] to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .").

enterprise ("CCE") statute[2] in support of his contention that
Section 1960 precludes aiding and abetting liability.   These
statutes are in fact part of the small subset of crimes for
which aiding and abetting liability does not apply because they
target only those people who lead or manage the enterprises.
See United States v. Viola, 35 F.3d 37, 40-41 (2d Cir. 1994)
(reversing conviction of janitor on substantive RICO count and
finding that "simply aiding and abetting a violation is not
sufficient to trigger liability even though § 1962(c) punishes
those who participate 'directly or indirectly' in the
enterprise's affairs"); United States v. Amen, 831 F.2d 373, 381
(2d Cir. 1987) ("This 'carefully crafted prohibition aimed at a
special problem . . . [was] designed to reach the 'top brass' in
the drug rings, not the lieutenants and foot soldiers.' . . .
Here Congress defined the offense as leadership of the
enterprise, necessarily excluding those who do not lead."
(quoting Garrett v. United States, 471 U.S. 773, 781 (1985))).

     Both Section 1960 and the RICO statute cover a person who
"conducts" unlawful activity, and both Section 1960 and the CCE
statute concern management.   However, these statutes are not as
similar as Defendant suggests.   Defendant neglects to mention

---

[2] See 21 U.S.C. § 848(c)(2)(A) (defining a CCE as a series of
violations "which are undertaken by such person in concert with
five or more other persons with respect to whom such person
occupies a position of organizer, a supervisory position, or any
other position of management").

the key difference between the RICO and CCE statutes on the one
hand and Section 1960 on the other – namely, that Section 1960
imposes criminal liability on any person or entity that
"conducts, controls, manages, supervises, directs, or owns all
or part of an unlicensed money transmitting business."  18
U.S.C. § 1960(a) (emphasis added).  By extending liability to
any person or entity that conducts some "part" of a money
transmitting business, Section 1960 casts a wider net than those
statutes solely concerned with managers and leadership.  Indeed,
the Second Circuit's reinstatement of a Section 1960 count
against the unlicensed agent of a money transmitting business is
consistent with a broader understanding of those parties who may
encounter criminal liability under the statute.  See United
States v. Velastegui, 199 F.3d 590, 596 (2d Cir. 1999) ("The
direct transmission of funds in violation of New York state law
by an agent of a licensed money transmitter falls within the
ambit of conduct forbidden by section 1960.").

     The Government's comparison of Section 1960 to the illegal
gambling business statute, 18 U.S.C. § 1955, is more apt.
Section 1955 imposes criminal liability on "[w]hoever conducts,
finances, manages, supervises, directs, or owns all or part of
an illegal gambling business."  In the gambling business
context, the Court of Appeals has interpreted the word
"conducts" broadly, holding that "all who participate in a

gambling operation, 'regardless how minor their roles,' are 'conductors' of the business.  This includes agents, runners, 'independent contractors,' salesmen, and excludes only betting customers." United States v. Grezo, 566 F.2d 854, 857 (2d Cir. 1977) (quoting United States v. Becker, 461 F.2d 230, 232 (2d Cir. 1972); see Sanabria v. United States, 437 U.S. 54, 70 n.26 (1978) ("Numerous cases have recognized that 18 U.S.C. § 1955 (1976 ed.) proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor."). This expansive definition appears to authorize aiding and abetting a violation of Section 1955.  See, e.g., United States v. Paloscio, No. 99 Cr. 1199, 2003 WL 1872657, at *1 (S.D.N.Y. Apr. 10, 2003) (defendant convicted on count charging "the conduct of an illegal gambling business, or aiding and abetting the conduct of such a business, in violation of 18 U.S.C. § 1955 & 2").  The language of Section 1960 tracks that of Section 1955 almost exactly, and, as there is precedent in this Circuit permitting the aiding and abetting of an illegal gambling business, I find that the operation of an unlicensed money transmitting business offense under Section 1960 is equally susceptible to an aiding and abetting theory.

### III. Conclusion

Defendant's Rule 29 motion for a judgment of acquittal as to Count Three of the Superseding Indictment is denied.

**SO ORDERED.**

Dated:     **New York, New York**
           **May 25, 2010**

John F. Keenan
United States District Judge